Thank you, Your Honor. The — I think that this case in trying to apply Ohio v. Robertson, Idaho v. Wright demonstrates why the Supreme Court has called those rules inherently unpredictable. And I think the problem is exacerbated in this case by the fact that the trial court made only really two findings of fact, that the statements of the child were plausible, and the trial court didn't distinguish between the statements to the mother and the statements to the detective or the statements to the marriage and family therapist. But in lumping them together, the trial court said statements were plausible, chronological, and there was no motive to fabricate. That's all that the trial court found. So when the case first went to the Nevada Supreme Court, the Nevada Supreme Court issued an order-dismissing appeal and just said trial court is right, we're not going to reverse. It was an unpublished order the Nevada Supreme Court uses. When it came back to the Nevada Supreme Court under Idaho v. Wright, the Supreme Court then made a number of factual findings, which — so we aren't in the normal posture that you would be in reviewing or as the Supreme Court was in Idaho v. Wright, where we're reviewing factual findings made by a trial court and then being reviewed by an appellate court, and then you being in the position where you can look to see how they conducted that review. I suggest to you that the strongest reason and the most obvious reason why the Nevada Supreme Court opinion is objectively unreasonable, structurally unreasonable, is that no point in that opinion is the word presumption mentioned, because the Nevada Supreme Court was doing exactly what it should not do, which is simply deciding whether or not it would make factual findings that were different or in addition to those which were made by the trial court. And there are really three areas that I'd like to focus on today. We have a number of arguments here, but I think the three that I'd like to focus on in argument is the first is, is that there is a fair amount of collapsing of the two or three sets of statements. Frankly, the statements to the marriage and family therapist in which the marriage and family therapist testifies that during her repeated contacts with the child, the child would not confirm that any molestation occurred, really help the defense. So let me focus on the statements to the detective and the statements to the mother and distinguish them, because the first argument that we have is that this — the decision of the Nevada Supreme Court is contrary to well-established Supreme Court law, because the statements to the detective are virtually indistinguishable from the statements which were found to not be admissible in right. Certainly these statements were not spontaneous. That can't be the case. The detective testified that he pre-interviewed the child before he turned on the tape to make sure that her facts would be — would be stated chronologically and in order. In fact, on two occasions, as I go back to reexamine the transcript, the detective testifies that he turns on and off the tape. Before he has her demonstrate with the dolls, he turns off the tape, according to his testimony at trial, so that he can talk to her about the dolls, and then he turns the tape back on when she — when she plays with the dolls, which the tape, which is the most confusing and, frankly, one of the most time-consuming things that I've had to do in this case — well, there have been a number, but one that we've done — is to — I have gone through every inch of that record to see where the Nevada Supreme Court got the idea that the questions asked by the detective were not leading. Where did they get that? It sounded as if they had listened to a tape or looked at a transcript. I went up to the Nevada Supreme Court. I went through the record with a fine-tooth comb, which is where I found that notated opinion when they got Idaho v. Wright back. There is nothing in this record which would have allowed the Supreme Court to say that we believe the questions were not leading, unless you count the fact that the detective says, well, then I asked her about this, and then she said. Even if — this is now that the — in Idaho v. Wright, for instance, the doctor's questioning was not taped either, and there was no record in evidence. But what you do find in the Supreme Court opinion is the number of quotes from the doctor as to the nature of the questions that he asked. But you can't even distinguish it on that, on the basis that they were not leading questions, because even in Wright, the detective — even in Wright, when the doctor asked — when the child spontaneously provided some information, they analyzed that. There were a series of statements that they found were prompted by the doctor. There was a last statement which they had to analyze in which they say it was spontaneous. They say because there was evidence that there had been prior interrogation, we can't even count that. So I suggest to you that at least with regard to the detective's statements, you cannot distinguish the facts in Wright from the facts in this case. And therefore, with regard to the detective's statements, which this Court has already found was the verdict, that that would require granting of relief on that ground alone. The other two areas which are applicable to all of the statements that are structural, that are objective, that are things that you can look at in the opinion and say, this is just not — this is just not how this is supposed to happen. It's not whether you would reweigh the facts again and come to a different conclusion. That's not what I'm suggesting you do, because you can't do that. But I am saying, though, when you have a court that is reviewing a lower court which has not only been silent about how it was conducting its analysis of the evidence that it had before it, but a lower court, the trial court in this case, applying the wrong presumption. There is no question that Judge Mosley said his — what presumption he was applying. He was applying a presumption of admissibility, which is exactly the opposite presumption from what must be applied pursuant to Ohio v. Roberts and Idaho v. Wright. Judge Mosley said explicitly on the record, I don't find anything which takes this out of the — out of the situation which the statute contemplated, meaning that the — a child under 10 need not testify. So he's applying the wrong presumption, the opposite presumption. The Nevada Supreme Court is reviewing that, but at no place in their opinion do they say what the — do they apply the presumption itself to their reasoning. At no place do they say that we're looking at this evidence in light of the presumption and determining whether or not the prosecution has sustained its burden of proof in order to — the prosecution has sustained its burden of proof in order to take it out of the presumption in order to say that those statements are admissible, absent. So is it your position that they have to specifically mention the word presumption in order to be affirmed? No. No, that's not my position. But I'm saying that you can look objectively at this opinion, and based upon what they did, you can see that they did not apply a presumption. I suppose what your adversary is going to say when he stands up, and you can rebuttal that right now if you'd like, is that after — in Idaho v. Wright, after they talked about the various approaches, they have an analysis that they set up, and that he will say that in the Supreme Court in this case followed the same analysis. Whether it comes out one way or another way, the analysis was the same, and they don't have to mention the word presumption as long as they follow the analysis that comes from the presumption. What would your response be to that? I think that if they actually conducted the correct analysis, then maybe that argument would have some weight. But they didn't even do that, because what they didn't do was — because they didn't follow the structure of Idaho v. Wright. They didn't say, we will separate out the evidence that — that — that — we will separate out the evidence that is outside of the circumstances of the statements. But what they didn't do then was to also determine what those circumstances which detracted from the reliability of the statement. Well, the — the problem there — there is that Idaho v. Wright gives them a lot of latitude as to how it's to happen. It says these are things you can consider, then gives broad latitude to the trial court to do it. Why wouldn't that be within the trial court's broad latitude? This Court has said that that's not correct. This Court has said that you — that the State court cannot simply ignore, simply say, as they did in footnote 8, that the — that the detracting evidence, the evidence which refutes reliability — and on page 11 of our brief, we go through very, very specific, very damaging stuff that — as to reasons why these statements were not reliable. And the Supreme Court said, we are not going to consider it. I'm conscious of your dissent in which you say, well, they — they looked — they said they looked at the totality of the circumstances. You know, I suggest to you that the only — the only meaning that there can be in when — in the rule with regard to when you can give deference to a State court opinion is that when you're analyzing a question, and particularly in this case where they went on at length, when they say in the footnote, we don't think that we can even consider marital discord here, that what's happening with the Nevada Supreme Court, since they don't, in our analysis, ever mention those things which detract from the reliability of the statements, that you can — you can look at that objectively and you can say, you know what? The Nevada Supreme Court did not consider the fact that this child had — had danced — had practiced exotic dancing with her mother, that this child had observed sex on numerous occasions, and therefore, their statement that she had knowledge of sex that was beyond a 6-year-old's should not be considered. Kennedy, specifically saying that the Court must consider all of the outside evidence going one way or the other? Your case in Webb, yes, it says that. It says that that is not what Wright — Wright does not tell you that you should not consider the detracting evidence. And it makes sense, Your Honor, that you would — you would consider the evidence that detracts. The only reason for the rule that you can't use corroborating evidence is because of the presumption. It's because the presumption says that it's not admissible unless it is of the kind of evidence that it would be like a firmly rooted exception to the hearsay rule. So to use corroborating evidence, then, would — would throw that — that presumption on its ear. But that doesn't mean you could ignore the fact that on several of your findings as a — as a court, that you can simply ignore those things — consistency. On two occasions, the evidence — the evidence was that this child told a really, you know, sort of all-in-all-fours consistent statement. On at least two other occasions, she was inconsistent, and probably many more than that because the marriage and family therapist said, I saw her weekly, but never defined how long she saw her. And she — he — she saw her weekly. And on no occasion would the child confirm that molestation occurred. So — so even — so — so what the Supreme Court's opinion is saying to you is that we can look at the two consistent occasions, and we can ignore the fact that on every other occasion, when that child was asked about this incident, the child either refused to confirm it or she gave inconsistent statements. Well, with respect to the refusal to confirm, is there expert testimony in the record suggesting that that's not inconsistent with the trauma and the denial that might accompany this? Well, that's — that's — that's why the State put that witness on. You know, the State put the — put this marriage and family therapist on. This is — she's not a doctor. She had in-service training with a — with a victims group, something like that. She was a DA's counselor. And she — they put that evidence on to say, well, the reason she's being inconsistent is because that's what child molestation victims do. Well, of course, if that's what we're going to do, the reason that she's being inconsistent is maybe because this didn't happen. It's sort of like saying the reason that we know that this child is telling the truth is because she expressed affection for Mr. Bochting. Well, maybe the reason that she's saying that is because she loved Mr. Bochting and this didn't happen. Maybe the reason — But it's — it's very similar to other expert testimony as to why there's a lag in reporting, can be years of lag in reporting, for example, as you know, for — for sexual offenses. But with that evidence in the record, the court isn't — isn't required to discount that evidence, is it necessarily? And isn't that — it's a — it's an explanation. And if the court chooses to believe that explanation or to credit it, how under AEDPA do we disregard it? Does the court address the inconsistencies? The court doesn't talk about the inconsistencies. That's the problem, is that the court never mentions the inconsistencies. And footnote 8 tells you why, because they believed they couldn't. They misunderstood Idaho v. Wright. They thought that what it — that what they were being directed to do was to only look at the circumstances surrounding the — surrounding the students and couldn't even look at — at marital discord in terms — couldn't look at the fact that Laura Bochting took two days to take the child to the hospital after she's supposed to have been told these horrible things. Couldn't even look at the fact that Laura Bochting left the child alone with Marvin Bochting as soon as he came home in the morning after these things were supposed to have occurred. And the court — the court doesn't mention any of those things, and the court tells you in footnote 8 what it's doing. It tells you it's not doing it. That's a structural objective error in their application of Idaho v. Wright. And this court has already found that you should look at those factors, that you can look at those factors. And I suggest to you that in this case, the fact that they were not looked to is a structural error in this opinion. The — I would ask that the court look at page 11 of the number of facts that the court did not — Roberts. Page 11 of what? Of — I'm sorry, of our supplemental brief that we filed prior to this hearing. And I — you know, there's one, two, three, four, five, six, seven — there's at least nine very At least should have mentioned and rejected. And I think that that's what you do on an — on an EDPA analysis of a high court of the state, is you look to see not whether you would come to a different conclusion based upon those facts, but you look to see whether or not they applied the law that they had before them in such a way that you — that you're able to say they did — they applied the law correctly, objectively, reasonably, and correctly. And I suggest to you not looking at those detracting facts is — is extremely compelling in saying that objectively you cannot say that that's what happened with the Nevada Supreme Court. The — I would like to, at this point, go through the five things that the court did. And I — and let me tell you why I think that it's important to do that, is that because we're in this odd situation where none of the things that the Nevada Supreme Court found were found by the trial court. So the — so the — the bench that saw the witnesses, the bench that — that reviewed the testimony, that heard the detective, that listened to the — that listened to the first statements of the child, that listened to the mother, didn't find any of the things that — that the Nevada Supreme Court found. And — and — and so if you take the — look at the first factor that they considered, spontaneity and repetition, does — spontaneity does not apply to the detective statement at all. And why — why is spontaneity a factor? It's a factor because there's no time to reflect. We know that the detective rehearsed the child. He says he did. He says he got the facts straight before he started the interview officially. We have conflicting testimony with regard to whether the mother was present. The mother said during trial she was present during the interview with the detective. We — we have state of mind, agitation and fear. Laura Bochting testified she looked like she'd just woken up from a bad dream. And so is — is this a — is this a factor? Are they applying this factor in the way that Idaho v. Wright suggested they should? State of mind with Laura Bochting, she looks like she woke up from a bad dream. State of mind with the detective, she was happy throughout the interview and talkative. So state of mind can't be it if both sets of statements come in because it's one way during one set of statements and another way during another. Knowledge of sexual conduct, although the Supreme Court says, yeah, we recognize that there was some knowledge of sexual conduct, they don't use that in their analysis and simply find she had knowledge in advance of that of a six-year-old. And childlike terminology, the same as Wright. Same words were used as they were in Wright, not credited in Wright. That's why it's contrary to because you've got the facts that are on all fours. Affection for — for Bochting, there was no motive to fabricate the right, simply not sufficient when they went through the calculus that Supreme Court said that's not enough. And what I'd like to do, Your Honors, if I could, is to reserve a couple of minutes. Thank you. Good afternoon. Thank you for having us back. I think the difficulty that Mr. Bochting has in this case is that much of his argument flies in the face of the two controlling standards. One of those standards, of course, is the habeas standard under Section 2254D. But the other standard is the standard that Judge Wallace alluded to, which comes out of the Wright case. The Supreme Court was very explicit on a number of very important issues in the Wright case. One of those issues was that state courts not only should be given — and this is pre-AEDPA, because it was a 1990 decision — state courts have to be given not just some deference or not just some benefit of the doubt. State courts and lower federal courts, when they engage in the reliability analysis, must be given, quote, considerable leeway, end quote, in how they consider the applicable facts. The Supreme Court, of course, in Idaho v. Wright specifically laid out four specific facts, noted that some other cases have used — other state cases have used more or used different issues. They came down with four specific factors that they liked, and then they said any other relevant fact are going to reliability. So they're allowing state courts to consider factors that they didn't even mention, trusting, I presume, the judgment of experienced judges in the state and federal judiciaries to make these determinations that judges make every day. Judges — And they lamented that in footnote 8. We'd love to have this, and they sort of look at it anyway, but — You're absolutely correct. They did. Anyway, they — all the indicia of reliability have not been accepted by the Supreme Court. The issue of the positive corroborators and the Nevada Supreme Court's lamentation of that, I'm presuming, came from Judge Kennedy's dissenting opinion. He apparently had the same complaint that corroborating evidence should be considered No, we're not applying a dissent, are we? I'm sorry? We're not applying Judge Kennedy's dissent. No, absolutely not. The Nevada Supreme Court would point out, and I know that Bogtings made a big issue out of this complaint. Part of his argument seems to be you can't trust what the state court did because they dropped that complaint in that footnote. Therefore, there's something untoward about their analytical process. The difficulty with that argument is they said, like Justice Kennedy, we disagree with part of this standard, but we are obligated to follow it. They said explicitly in their opinion, in State v. Bogtings — sorry, Bogtings v. State. And we reluctantly do so. We're going to apply it. They said they applied it. They looked at those four factors. They did not look at corroborating factors, which I would point out was the mistake that the Idaho Supreme Court apparently made in the Wright case because they did look at the corroborating factors. Apparently, in Justice O'Connor's opinion, there's a policy determination that these factors, like other hearsay exceptions, have to focus only on the factual circumstances surrounding the actual making of the statement, the Idaho court statement, to the witness who will end up, then, be called as a — as a witness. Kennedy. Where did the Supreme Court of Nevada acknowledge there was a presumption that this was not admissible? Feigin. The basic presumption of the — of the ruling? Feigin. They did that — they did that when they applied the factors of Idaho v. Wright. Kennedy. Oh, no, wait a minute. There's a presumption this cannot be admitted. Feigin. Absolutely. Kennedy. Did they ever acknowledge that? I think they acknowledged that as part of their decision when they implied. I can't — they didn't — Kennedy. Well, where do you think this — I mean, they did not in any — by any verbal or, so far as I can see, any substantive way, act upon that. You know, I've looked at this opinion a number of times from the Nevada Supreme Court. You know how they start, and you may not — but I assume it's fresh in your memory. They speak of the statute, the Nevada statute, as balancing the State's decision and the State's right for the evidence against the constitutional right not to have it. Now, is that a presumption, if you say there's a balance between the State right and the constitutional right? I don't — I agree with you. I do not think Idaho v. Wright creates a balancing test. The State's — Well, do you — do you agree with me that that's what the Nevada court did? They said we've got the State's right balanced against the Constitution. They did that prior to their explicit application of the right factors. Well, that's where they're starting. That's their starting point. And I would take it as that's what they were doing. We've got a right here, the statute that creates that right, it's constitutional. We'll apply it. The — I think when — I agree with you that that language is in there. I think, though, when — this is a unique case, because this case, this first time on this remand from the U.S. Supreme Court to the Nevada Supreme Court, they were told explicitly to apply Idaho v. Wright as the controlling case law. They said they did that. They discussed the various issues and the structural — the analytical structure of Idaho v. Wright. In that case, they applied those factors, they applied the facts of the case, and they came up with a decision. It seems to me that when a State Supreme Court tells you that they are applying the decision that the U.S. Supreme Court just recently told them explicitly to apply, that we have to take them at their word that they did that, they applied those factors, I don't believe that simply because the word presumption doesn't appear in their analysis, that that simply means they didn't do that. Well, I don't — Sotomayor Well, I agree with you that they didn't have to use a magic word, but they had to in some way not have their main assumption that the State had a right. That's the point I'm trying to make here. They conclude by saying that in viewing the totality of the circumstances surrounding the child's out-of-court statements as defined in Wright, we conclude the district court did not err in finding sufficient, particularized guarantees of trustworthiness to admit the proffered statements. That's the last, second-to-last paragraph in the Nevada Supreme Court's opinion.    statements as defined in Wright. That, to me, tells me that they — they are telling us they explicitly applied the Wright standard because they were looking specifically at the particularized guarantees of trustworthiness. Kennedy And let's go on to that. Do you think that this — these statements were particularly consistent? I would — I do, and I would respectfully disagree with Ms. Forsman that there were only two consistent statements made by the child. In fact, I count five consistent statements. There were statements made to the mother. There were statements made to Detective Zinovich. There was a second statement made to mother after the mother testified that when Docting came home that Sunday morning, that she went to pay the rent. She was gone about 10 minutes. She came back, and the child was crying when she came back from paying the rent. She came back, and the child was crying, and the child said to her, I told him what happened, he's leaving, I know he's — something to the effect he's leaving, or daddy said he has to leave now, daddy told me to tell you that I lied. But mommy, I can't tell you that I lied because I was telling you the truth. That is another confirmatory statement. Well, they're certainly there, but how about the inconsistent statements? I'm sorry? How about the inconsistent statements? Don't you consider them? In court, before a judge, she gives a different account. She won't support those statements. You're referring to the preliminary hearing testimony. I am. I have a couple of comments on the preliminary hearing testimony, if I could. My first comment on the preliminary hearing testimony is that it is more corroborative, it is more consistent than inconsistent. Well, that's a great test, but would you deny that she says no, no, no, at a time when her mother was bullying her, entering into the process. I mean, it's an amazing hearing that permitted the mother to keep urging her to tell a story, and yet she wouldn't tell it. Well, my recollection of the preliminary hearing, Your Honor, is what the mother said was, to the child, was, tell the truth. And hurry up and do it. Tell the truth. And you'll be out of here. Tell the truth as to what happened. At the preliminary hearing, starting around page 32, the Autumns testimony at the prelim I show, starting around page 32, question to her was, did there ever come a time when your daddy touched you in a way you did not think he was supposed to touch you? Answer, yes. Now you said there was a time you thought your daddy touched you that you didn't think he ought to touch you like that. Is that right? Answer, yes. Do you remember when that was? A long time ago. Do you remember, was your mommy there? Was your mommy there? No. How about honesty? Was honesty there? Yes. Where was honesty? In the same room with you? No. Where was honesty? Answer. She was in the living room. And what room were you in? In the bathroom. What happened when you were in the bathroom? No response. At this point in time, once the details of the sexual assaults are being asked about, that's when the child broke down and started getting very evasive in her answers. You are correct, Your Honor. And I concede, at one point in time, she said Well, don't you think the Supreme Court and Nevada flagrantly failed to look at the inconsistency? Flagrant? No. I do not think they flagrantly failed to look at the inconsistencies. They didn't look at it. The one statement in this case that is inconsistent was the question, what part of your clothes did he leave on? Did he leave on your top? Answer. Pants. He left on your pants? Witness nods head. That is an inconsistent statement. Well, then the whole thing goes on. I'm not going to repeat it all. Right. No, I understand. What's difficult here is I think that statement may well be in the recitation of facts, but then there's no dealing with the inconsistencies in the opinion itself. So that's really the hurdle I'm trying to look at. Agreed. Agreed. A number of the what I would call disconfirming evidence, if you will, for lack for just to create a shorthand, is in fact mentioned either in the factual section of the opinion or it's mentioned in a footnote. The child's elevated knowledge of adult anatomy and seeing her parents shower together and walking in on her parents having sex, that's mentioned. The this, the Nevada Supreme Court opinion discusses the, my recollection is they discuss the inconsistent testimony from the preliminary hearing. You say in the opinion. You're referring to the Nevada Supreme Court opinion. Yes. It may not have been analyzed. I think Judge Noonan, I think Judge McKeon, excuse me, Judge McKeon is correct. But the Nevada Supreme Court said they looked at the totality of the evidence and it was the totality of the evidence under Wright that they analyzed. They talked about a lot of that disconfirmatory evidence in the opinion. They're aware of it. And then they said, we are applying the totality of the evidence. Well, Mr. Beyer, you're doing a good job defending the State's position, but you know as well as I do, there's such a thing as lip service. People say a formula. They don't mean it. And frankly, I read that opinion of the Supreme Court of Nevada, very rebellious. They say themselves very reluctant to adhere to the standard. And they go through the motions with quite implausible, outrageously wrong analyses. Take the statement about her waking out of a nightmare. That's a spontaneous statement? What, somebody settles out of a nightmare? The specific testimony you're referring to is when a child came out into where her mother was watching television. The specific testimony was that she looked like she had woken up from a bad dream. Well, that's pretty good. But we don't know if she had been engaging in a dream. The question that mother was answering was, what did the child look like? And I think she was trying to create a descriptive picture of the child. She looked like she had woken up from a bad dream. I don't think we know, in fact, that she was engaging in a dream. The difficulty with the dream conjecture is it doesn't explain her detailed statements to Detective Zinovich. Well, we're not going to enter into what explains or not explains. The question is, was the Supreme Court of Nevada objectively unreasonable? And the overriding standard was the one that the Supreme Court of the United States took from Wigmore. Would cross-examination have added something? If she had been subject to cross-examination at the trial, would that have added something? Now, the answer to that must be affirmative. In this case? Yes. I would respectfully disagree. I don't think cross-examination would have added anything, because the question I go to the unavailability issue. I'm sorry? Doesn't that also go to unavailability, if she wouldn't testify, in effect, or couldn't? In – I'm not clear on your question. Well, the State took – the State took all the reasonable efforts they needed to take, their good faith efforts, to have her there at trial. And under Roberts, they met – they did their duty in getting her there. The fact that the – the fact that she broke down and was not able to continue, I don't think inures to the State. We have to – I think we have to keep in mind the larger context. This is a 6-year-old girl who is a sexual assault victim. Adults don't like taking the stand. 30-year-old rape victims don't like taking the stand. They don't like reliving the violence of that crime. This was a 6-year-old girl who, in the first half of her preliminary hearing, I would suggest was very consistent before she got evasive, and as the trial court judge said, and I think as Judge Wallace – and I apologize if – if I'm not exact on my the child was being traumatized by the criminal justice system by being asked these detailed questions in a strange room in front of a room full of strangers, I would expect a 6-year-old child to have problems being asked these detailed questions. Well, if the State doesn't have a right to put someone on the stand, it may be the way the Constitution works. It's traumatizing. Your position really is you can convict anybody on a 6-year-old's testimony or a 3-year-old's for that matter if she'll break down if asked a question in court. That's a pretty extreme position. I hope you don't – I hope you don't hear my comments that way, because I – my fact that the Nevada Supreme Court told us that they looked at the totality of the circumstances. If, in fact, they did what they said they did, as instructed by the U.S. Supreme Court in a published opinion, where they actually discussed those factors in their case and talked about what I'm calling some of that disconfirming evidence, in that case, under the old law – I mean, the irony is it's not even the law anymore, but under the old law that's not quite dead yet, they – under the Constitution, those statements are admissible, because the – according to both Roberts and according to Crawford, all hearsay is – has never been inadmissible under the Confrontation Clause. Under Crawford, more hearsay comes in now than before, under the way I see it. And I think Judge Alito commented on that in our case. But I'm not – let me make one – let me make two very specific points on this disconfirmatory evidence issue that I think really go to the heart of this issue. There is nothing in Idaho v. Wright that commands a lower court to look at disconfirmatory evidence. Courts are not allowed to look at corroborating evidence, but there is nothing in that opinion that says you may – you may not look or you must look at disconfirmatory evidence. As a matter of fact, if I can quote from Idaho v. Wright, what they specifically said was just the opposite. We agree that particularized guarantees of trustworthiness must be shown from the totality of the circumstances, but we think the relevant circumstances are limited two ways. They include only those that surround the making of the statement, nothing external, and, second, that render the declarant particularly worthy of belief. There is nothing in Idaho v. Wright that creates a duty on lower courts to examine evidence. The problem with the rule, as you stated, is if you had a child who was blind and she said, I saw that guy, he looked just like this, and then the court fails to mention, actually, she's blind, under your theory, the fact that they failed to mention that she was blind would have no effect. I think it's – it does – when you compare it to the – That would be absurd, wouldn't it? It would be absurd, but under the express language of Idaho v. Wright, they don't create any kind of a duty dealing with what I'm calling disconfirming evidence. Now, that kind of evidence, for example, in a situation where you take the child to the doctor and the doctor says, there's nothing, I can't find any physical evidence of trauma, unlike this current case, that is relevant evidence. I'm certainly not saying it's not relevant. I don't think it's relevant to the reliability analysis, but it's Brady material and it certainly should come in. Similar to this case, I'm not convinced under the standard of Idaho v. Wright that the preliminary hearing inconsistencies should be part and parcel of this analysis because they don't go to the worthiness of belief of the declarant. Now, are they relevant? Absolutely. They're prior and consistent statements, and I would point out that Judge Mosley in this case, seeing that those were prior and consistent statements, admitted those at trial so that the judge could weigh the inconsistent statements with the consistent hearsay statements. But the scope of facts that a court has a duty to look at is very, very narrow under this language of the Supreme Court on page 819 in the Wright case. Your time has expired. Do you want to summarize? I do. Let me just say in closing that the Nevada Supreme Court did its duty. They applied the case. They must be given considerable leeway to do the Wright analysis. And then there's a second, the second standard under 2254d. Essentially what we have here is leeway squared because both standards give the State courts leeway in how they apply those factors. Thank you. Thank you. Two things, Your Honors. First is, is that the detectives, statements to the detectives that the U.S. Supreme Court has told us would not come in pre-Crawford or post-Crawford. No one questioned, no one has, there's never been a dispute about the fact that those statements are testimonial and what the U.S. Supreme Court said in Crawford was our results prior to Crawford have been consistent with Crawford. So they're telling you that even pre-Crawford, the U.S. Supreme Court, they point out how all the lower courts have been all over the board on the statements, but their results have not been inconsistent with Crawford. If they're testimonial, that means that the detective statements would not come in, should not come in. Secondly, with regard to the utility of cross-examination, that is an expression of the presumption. And it is not, you don't look at it from the point of view of would cross-examination when the child will not be cross-examined have any utility. The interchange with regard to the preliminary hearing points out and demonstrates, I think, extremely poignantly the fact that cross-examination would have had utility. And you can't simply allow the hearsay to come in if it's a circumstance in which cross-examination would have had utility. You can't just excuse the witness at that point. And so I think it's an expression of the presumption. And finally, I don't think there's any question what the Nevada Supreme Court did. And I think that you can only read the language, I believe, in footnote 8, and it's on page 13 of the Nevada Supreme Court opinion, and they state in their criticism of the majority opinion in Idaho. Kagan. I'll read that one quite a lot. Okay. Then I don't need to reemphasize it. Then I would point to exactly the same language that the Deputy Attorney General mentioned with regard to what was the Nevada Supreme Court doing with regard to the presumption. The Nevada Supreme Court said the district court did not err in finding sufficient particularized guarantees of trustworthiness. The district court's findings were based upon a determination that the presumption was for admissibility of hearsay, not a presumption against admissibility. So finding that they did not err tells you, again, what the Nevada Supreme Court was doing, was it was not – it was not applying a presumption of admissibility in this instance. Thank you. I want to thank both counsel for your arguments today and also for the briefing. This case has been very extensively briefed, as you know, but it's been very helpful. Arguments like this. So we now submit yet again the case of Bockling v. Fair. Thank you for your arguments. Thank you, Your Honor. All rise. Thank you.
judges: Wallace, Noonan, McKeown